**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

5634 EAST HILLSBOROUGH AVENUE, INC.,
d/b/a "TOOTSIES;" GEMINI PROPERTY
VENTURES, LLC, d/b/a "SHOWGIRLS;" and
SHOWGIRLS MENS CLUB, INC., d/b/a
"SHOWGIRLS,"

      Plaintiffs,

v.                                CASE NO: 8:06-cv-1695-T-26EAJ

HILLSBOROUGH COUNTY, FLORIDA,

      Defendant.

_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment and various

affidavits, depositions, exhibits[1] and Plaintiff's Response in Opposition and affidavits and

exhibits.[2]  After careful consideration of the arguments, the record and the applicable law,

the Court concludes that the Motion should be granted.

**Background**

The Plaintiffs in this consolidated action are sexually oriented businesses located

in Hillsborough County, Florida.  This action involves a constitutional challenge, both

---

[1]  See dockets 35-42.

[2]  See dockets 45, 46 & 47.

facially and "as applied" to three adult use ordinances.  In one of the two complaints,[3] the Plaintiffs are "bikini bars" located in the County: Tootsies in Tampa, Showgirls in Plant City, and Showgirls in Valrico.  In the second complaint,[4] the Plaintiffs include additional adult businesses in Hillsborough County, including the adult book stores known as 4-Play Videos III, Pleasures I, and Planet X, all licensed adult bookstores in Tampa, and an additional bikini bar known as Showgirls Men's Club in Brandon.[5]  According to the first complaint, a "bikini bar" is "a place of public assembly serving alcohol to patrons, in conjunction with providing First Amendment protected dance performances, the content of which emphasizes issues dealing with a variety of human emotions, all presented by females wearing [bikinis]."[6]  These bikini bars are located in "an area of generic commercial uses which are fronted by widely traveled roads."[7]

On September 7, 2006, Hillsborough County's Board of Commissioners (the Board) unanimously adopted three ordinances[8] which regulate sexually oriented businesses in Hillsborough County: Ordinance 06-24; Ordinance 06-25, and Ordinance

---

[3]  See docket 1.

[4]  See docket 1 at 8:06-cv-2323-T-26MAP.

[5]  See docket 1 at 8:06-cv-2323-T-26MAP at paras. 8-13.

[6]  See docket 1 at paras. 8, 9 & 10.

[7]  See docket 1 at para. 14; docket 1 at 8:06-cv-2323-T-26MAP at para. 16.

[8]  See docket 35, Ex. A, B & C.

06-26.[9]  All of these three ordinances regulate sexually oriented businesses.  Ordinance 6-24 involves zoning, Ordinance 06-25 involves licensing and regulations, and Ordinance 6-26 involves "bikini bars."  The purpose of all three ordinances is articulated in the body of the ordinances as follows:

> It is the purpose of this ordinance to regulate [*the location of sexually oriented businesses* in Ord. 06-24; *sexually oriented businesses* in Ord. 06-25; *alcoholic beverage establishments* in Ord. 06-26] in order to promote the health, safety, and general welfare of the citizens of the County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of [*sexually oriented businesses within the County* in Ords. 06-24 & 06-25; *paid physical contact in alcoholic beverage establishments between patrons and certain employees of the establishment* in Ord. 06-26]. The provisions of this ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content or reasonable access to any communicative materials, including sexually oriented materials. Similarly, it is neither the purpose nor effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market.  Neither is it the purpose nor effect of this ordinance to condone or legitimize the distribution of obscene material *or performances.*

Ord. 06-24 § 2.02.06(D)(1); Ord. 06-25 § 2 1/2-41(a); Ord. 06-26 § 3-61(A) (emphasis added).  Each ordinance also contains a section titled "Findings and Rationale" which recites that the Board has reviewed evidence of adverse secondary effects of adult uses presented in hearings and in reports made available to the Board and lists numerous

---

[9]   The effective date of the ordinances was January 10, 2007; however, according to the County, it has not enforced the three ordinances against the Plaintiffs in this action.

opinions in cases in which courts have interpreted evidence of this nature.  Ord. 06-24 §

2.02.06(D)(2); Ord. 06-25 § 2 1/2-41(b); Ord. 06-26 § 3-61(B).

Relying on the cases cited in addition to evidence presented in hearings and reports

made available to the Board, each of the three ordinances articulates the findings.  In both

the zoning and the licensing and regulatory ordinances, the findings by the Board are as

follows:

> Sexually oriented businesses, as a category of commercial
> uses, are associated with a wide variety of adverse secondary
> effects including, but not limited to, personal and property
> crimes, public safety risks, prostitution, potential spread of
> disease, lewdness, public indecency, illicit sexual activity,
> illicit drug use and drug trafficking, undesirable and criminal
> behavior associated with alcohol consumption, negative
> impacts on surrounding properties, litter, and sexual assault
> and exploitation.
>
> . . . . [10]
>
> Each of the foregoing negative secondary effects constitutes a
> harm which the County has a substantial government interest
> in preventing and/or abating in the future.  This substantial
> government interest in preventing secondary effects, which is

---

[10]   The zoning ordinance contains the following additional statement regarding the
location of sexually oriented businesses:

> Sexually oriented businesses should be separated from
> sensitive land uses to minimize the impact of their secondary
> effects upon such uses, and should be separated from other
> sexually oriented businesses, to minimize the secondary
> effects associated with such uses and to prevent an
> unnecessary concentration of sexually oriented businesses in
> one area.

Ord. 06-24 § 2.02.06(D)(2)(b).

the County's rationale for this ordinance, exists independent
of any comparative analysis between sexually oriented and
non-sexually oriented businesses.  Additionally, the County's
interest in regulating sexually oriented businesses extends to
future secondary effects that could occur in the County related
to current sexually oriented businesses as well as sexually
oriented businesses that may locate in the County in the
future.  The County finds that the cases and secondary effects
documentation relied on in this ordinance are reasonably
believed to be relevant to said secondary effects.

Ord. 06-24 § 2.02.06(D)(2)(a)(c); Ord. 06-25 § 2 1/2-41(b)(1)(2).  The "bikini bar"

ordinance[11] contains the following findings by the Board:

> 1. Paid physical contact between scantily-clad employees of
> alcoholic beverage establishments, including "bed" dances,
> "couch" dances, and "lap" dances as they are commonly
> called, are associated with and can lead to illicit sexual
> activities, including masturbation, lewdness, and prostitution,
> as well as other negative effects, including sexual assault.

> 2.  The County finds that such paid physical contact by bikini-
> clad or otherwise scantily-clad employees in alcoholic
> beverage establishments, even though said employees are not
> nude or semi-nude as defined in other portions of the
> Hillsborough County code, is substantially similar to and
> presents similar concerns as conduct by nude and semi-nude
> performers in sexually oriented businesses.

> 3.  Each of the negative effects targeted by this ordinance
> constitutes a harm which the County has a substantial
> government interest in preventing and/or abating in the future.
> This substantial government interest in preventing such
> negative effects, which is the County's rationale for this
> ordinance, exists independent of any comparative analysis
> between the regulated establishments and other, non-regulated
> establishments.  The County finds that the cases and

---

[11]   Ord. 06-26.

> secondary effects documentation relied on in this ordinance
> are reasonably believed to be relevant to the County's interest
> in preventing illicit sexual behavior.

Ord. 06-26 § 3-61(B)(1)(2)(3).

Two public hearings were held before the Board prior to their adoption— one on

August 2, 2006, and the other on August 16, 2006.  Testimony was adduced both for and

against the ordinances.  The Board also reviewed judicial decisions,[12] secondary effects

reports,[13] and affidavits from private investigators.[14]  Both sides presented opinions from

---

[12]   See docket 36 at Ex. D-01.

[13]   See docket 36 at Ex. D-05, pp. 8-11 (documenting higher sex-related crimes in study areas and 89% of indecent exposure crimes were committed on premises of adult businesses—study done in Phoenix in 1979); Ex. D-04, pp. 13-14 (documenting "illegal sex and unsanitary conditions in sexually oriented businesses"— study done in Tucson in 1990); Ex. D-07, pp. 5-6 & 8 (articulating findings on criminal activities of prostitution, public lewdness, narcotics and indecent exposure associated with sexually oriented businesses and difficulty in enforcement of laws due to private areas blocked from view and booth configurations — legislative report in 1997 by Houston City council); Exs. D-08-18, D20a-23 (including reports from various cities including the dramatic decline in crime in Times Square after the removal of sexually oriented businesses there); Ex. D-19, pp. 32-38 (documenting paid acts of females engaging in masturbation in adult cabarets— transcript from testimony taken in Phoenix's hearings in "Adult Cabaret" in 1997).  The record contains numerous additional studies, expert reports from other cases and testimony from other proceedings which predominantly support the fact that higher crime rates occur in areas where sexually oriented businesses exist.

[14]   See docket 36, Ex. D-03, which contains numerous affidavits from private investigators' visits to numerous bikini bars and adult bookstores in Hillsborough County. Many of the adult bookstores had peep show booths in which evidence of masturbation was detected.  One of the investigators purchased a "bed dance" and a "couch dance" from the employees at a bikini bar.  Ex. D-03, pp. 2-3.  Another investigator returned at a later time and received lap dances from two other employees.  Ex. D-33.  The Board also reviewed affidavits from private investigators' visits to sexually oriented businesses in Manatee County which contained similar evidence.  Ex. D-25 & D-26.

retained expert witnesses.[15]  The County retained Richard McCleary, Ph.D., a

criminologist and university professor who provided two reports.[16]  Experts were also

retained by the opposition to the ordinances: Terry A. Danner, Ph.D., who is the Chair for

the Department of Criminal Justice at Saint Leo University; Randy D. Fisher, Ph.D., who

is an associate professor of Psychology and Director of the Survey Research Laboratory

at the University of Central Florida; Judith Lynne Hanna, Ph.D., who is an anthropologist,

dance scholar and dance critic; and Richard Schauseil, who is a licensed Florida real

estate agent.[17]  The experts for the Plaintiffs opined that the crime associated with

sexually oriented businesses was not more prevalent in areas where they are located,

contrary to the reports provided by the experts retained by the County.[18]  The Board

---

[15]   See docket 37 Ex. D-29 & D-30 (providing opinions in favor of the passage of the ordinance); dockets 38-42 Ex. D-34a-34h, D35a-35h, D36a-36e, D37a-37g & D38a-d (providing opinions opposed to the passage of the ordinance).

[16]   See docket 37, Ex. D-29 & D-30 (substantiating that negative secondary effects of sexually oriented businesses such as ambient crime, illicit behavior such as paid sexual touching, and the spread of disease resulting from illicit sexual behavior, are well-documented and need not be established by comparing adult and non-adult businesses such as bars---- report prepared by Richard McCleary, Ph.D. to the Board dated August 30, 2006).

[17]   Three of these four experts were used in the opposition to summary judgment in Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251, 1270-71 (11th Cir. 2003).  No mention is made in the opinion of Dr. Hanna.

[18]   In this summary judgment proceeding, Plaintiffs submitted four new affidavits of their experts.  To the extent they contain material and opinions of experts not previously disclosed to the County, this Court should not consider them.  See Corwin v. Walt Disney Co., 475 F.3d 1239, 1247 (11th Cir. 2007) (striking new affidavits from four experts as untimely because they were filed in response to motion for summary judgment and information had not been earlier disclosed); Norfolk Southern Corp. v. Chevron

considered all of the reports and testimony, both for and against the passage of the ordinances.

## Applicable Law

The standard of review that applies to facial and "as applied" challenges to sexually oriented business ordinances is "intermediate scrutiny," as opposed to strict scrutiny, provided the ordinances do not totally ban sexually oriented businesses and they serve a substantial government interest such as curtailing adverse secondary effects.  See City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000) (plurality opinion).  In construing these types of ordinances, courts first look at whether the local government has carried its initial burden of showing that the ordinance was enacted for the purpose of regulating "adverse secondary effects."  If the local government shows that the ordinance was enacted for this purpose, then the ordinance is deemed to be content-neutral, not directed at speech, and does not require strict scrutiny. Once this initial burden is satisfied, the burden shifts to the sexually oriented business to "cast direct doubt" on the local entity's rationale that enough evidence was presented to support its claim that its ordinance serves to reduce secondary effects without

_____

U.S.A., Inc., 279 F.Supp.2d 1250, 1274 (M.D. Fla. 2003), rev'd on other grounds, 371 F.3d 1285 (11th Cir. 2004) (holding that where affidavits of experts were filed after hearing on motion for summary judgment and affidavits contain information not found in original opinion, affidavits were stricken as late-filed expert disclosures which were prejudicial). Nevertheless, out of an abundance of caution, this Court has considered them in this summary judgment proceeding.

substantially reducing speech.[19] <u>City of Los Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425, 451, 122 S.Ct. 1728, 1742-43, 152 L.Ed.2d 670 (2002); <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, Fla.</u>, 337 F.3d 1251, 1263-64 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 988 (2004).  If doubt is cast on the rationale for the ordinance, then, presumably, the local entity must submit additional evidence to remove that doubt.

The amount of evidence the local government needs to support its rationale for its ordinance is "very little."  <u>Alameda Books</u>, 535 U.S. at 451, 122 S.Ct. at 1742-43; <u>Daytona Grand, Inc. v. City of Daytona Beach, Fla.</u>, 490 F.3d 860, 880 (11th Cir. 2007).[20] The same evidentiary standard of <u>City of Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41, 106 S.Ct. 925, 115 L.Ed.2d 504 (1991) remains in place today:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant* to the problem that the city addresses.

---

[19]   That the local entity cannot rely on "shoddy data or reasoning" is true; however, this statement in the plurality opinion of <u>City of Los Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425, 438-39, 122 S.Ct. 1728, 1736, 152 L.Ed.2d 670 (2002), does not raise the evidentiary bar for the local government.  <u>Daytona Grand, Inc. v. City of Daytona Beach, Fla.</u>, 490 F.3d 860, 880 (11th Cir. 2007) (citing Justice Kennedy's concurrence as the holding in <u>Alameda</u>).

[20]   <u>Daytona Grand</u> became final on September 17, 2007, the date the mandate issued from the Eleventh Circuit Court of Appeals.  <u>See</u> 6:02-cv-1468-JA-KRS at docket 202.

Alameda Books, 535 U.S. at 451, 122 S.Ct. at 1743 (quoting Renton, 475 U.S. at 51-52,

106 S.Ct. 925) (emphasis added); Daytona Grand, 490 F.3d at 880 (quoting same).

The Eleventh Circuit in Peek-A-Boo Lounge traced the history of how the United

States Supreme Court has analyzed cases involving a local government's ordinance

adopted to reduce the secondary effects of adult entertainment establishments.  Generally,

zoning ordinance cases are analyzed using the evidentiary standard set forth in Renton,[21]

and public nudity ordinance cases are reviewed by the standard articulated in United

States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[22]  Peek-A-Boo

---

[21]   Zoning ordinances limiting the location of adult businesses are evaluated based on time, place, and manner regulations.  A zoning ordinance is reviewed based on the following framework:

> [F]irst, the court must determine whether the ordinance constitutes an invalid total ban or merely a time, place, and manner regulation; second, if the ordinance is determined to be a time, place, and manner regulation, the court must decide whether the ordinance should be subject to strict or intermediate scrutiny; and third, if the ordinance is held to be subject to intermediate scrutiny, the court must determine whether it is designed to serve a substantial government interest and allows for reasonable alternative channels of communication.

Daytona Grand, 490 F.3d at 870.

[22]  A public nudity ordinance should be upheld if the following four prongs are met:

> (1) [is] within the constitutional power of the government to enact; (2) further[s] a substantial government interest; (3) [is] unrelated to the suppression of free expression; and (4) restrict[s] First Amendment freedoms no greater than necessary to further the government's interest.

Peek-A-Boo Lounge, 337 F.3d at 1264.

Lounge, 337 F.3d at 1255-56.  Over the years, however, the Supreme Court has melded

the two standards together to some degree, largely due to the numerous plurality opinions.

Peek-A-Boo Lounge, 337 F.3d at 1255.  For example, although Renton applies to zoning

ordinances, the third prong of the Renton standard is the second prong of the O'Brien

standard.  Daytona Grand, 490 F.3d at 874 n.20; Peek-A-Boo Lounge, 337 F.3d at 1264

(relying on Alameda Books).  In analyzing the cases, it is well-established that the local

government need only recite in its ordinance "the protection and preservation of the

quality of life in the city" in order to show that reducing negative secondary effects is the

rationale for the ordinance.  Zibtluda, LLC v. Gwinnett County, Ga., 411 F.3d 1278, 1286

(11th Cir. 2005).

The case of Daytona Grand is the most recent statement on the standard to be

applied in this case.  In Daytona Grand, the Eleventh Circuit followed the standard set

forth in Peek-A-Boo Lounge and the precedent relied on therein when it reversed the

district court on its ruling voiding the three nudity ordinances after denying summary

judgment and conducting a six-day bench trial.  The Eleventh Circuit reiterated its

statement in Peek-A-Boo Lounge regarding the type of evidence necessary to support a

local entity's rationale:

> To satisfy Renton, any evidence "reasonably believed to be
> relevant"— including a municipality's own findings, evidence
> gathered by other localities, or evidence described in judicial
> opinion— may form an adequate predicate to the adoption of
> a secondary effects ordinance.

<u>Daytona Grand</u>, 490 F.3d at 881.  The entity need not rely on "empirical" studies as opposed to "anecdotal" accounts.  <u>Id.</u>  "Anecdotal evidence is not 'shoddy' *per se.*"  <u>Id.</u>  If the local entity could have reached a different conclusion about the interaction between adult businesses and adverse secondary effects based on its own knowledge, the ordinance is not considered unconstitutional.  <u>Id.</u>  As long as the entity's rationale for the ordinance is reasonable, even if other reasonable but different conclusions exist, the court must not substitute its judgment for the local government's.  <u>Id.</u> at 882.

## Argument

Plaintiffs primarily argue that they submitted evidence at the public hearing in the form of expert reports, opinions, and testimony, and now on summary judgment in the form of four affidavits from their four experts, that refute the data submitted by the County.   Additionally, Plaintiffs argue that the data provided by the County does not relate to the areas surrounding the Plaintiffs' businesses in Hillsborough County. Plaintiffs contend that summary judgment must not be permitted because a genuine issue of material fact has been shown through the discrepancies between the data submitted by the County and Plaintiffs' own affiants' information.  Plaintiffs' experts claim that Plaintiffs' businesses add no heightened probability that crime occurs more frequently in areas where sexually oriented businesses are located as opposed to any other type of "non-adult" business.

The County argues that its evidence supports its rationale for the creation of all three ordinances.  The ordinances, it argues, are deemed to be content-neutral and are

narrowly tailored to combat the adverse secondary effects of sexually oriented businesses. Without banning speech, the ordinances fairly regulate the time, place and manner in which sexually oriented businesses may operate.  The County argues that it was not required to show that its ordinances regulate all sources of secondary effects or that "non-adult" entertainment businesses have just as many or greater negative secondary effects than sexually oriented businesses.  The County contends that the Plaintiffs' evidence did not cast doubt on the rationale for the ordinances, which is supported by judicial opinions, reports, studies, expert opinions, direct testimony, and direct evidence from investigators visiting adult book stores and bikini bars in Hillsborough County.

## Analysis

The Court agrees with the County.  There is no question from a reading of the three ordinances that they do not constitute a ban on sexually oriented businesses, but rather regulations on time, place, and manner.  The ordinances, as stated in the body of each of them, strive "neither to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market."  See Zibtluda, 411 F.3d at 1286.

Second, the rationale of the County appears in all three ordinances.  The foremost reason for the enactment of the ordinances is "to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the County [Ords. 06-24 & 06-25]" and "of paid physical contact in alcoholic

-13-

beverage establishments between patrons and certain employees of the establishment [Ord. 06-26]." The rationale is expressed in terms of preventing "deleterious secondary effects." Having placed its rationale in the body of each of the three ordinances, the County has met its initial burden of showing that the ordinances were enacted for the purpose of regulating adverse secondary effects. As such, the ordinances are considered content-neutral, or not directed at speech, and therefore subject to First Amendment review under intermediate scrutiny. See Daytona Grand, 490 F.3d at 870 (quoting Peek-A-Boo Lounge, 337 F.3d at 1264; Zibtluda, 411 F.3d at 1284-85).

Having determined that intermediate scrutiny applies, the Court finds that the ordinances are crafted to serve a substantial government interest— a reduction in negative secondary effects, while allowing for reasonable alternative channels of communication. All three ordinances provide that the "substantial government interest in preventing secondary effects, which is the County's rationale for this ordinance, exists independent of any comparative analysis between sexually oriented and non-sexually oriented businesses." Ord. 06-24 § 2.02.06(D)(2)(c); Ord. 06-25 § 2 1/2-41(b)(2). Plaintiffs attack the County's evidence essentially on the basis that it failed to use empirical studies to show that sexually oriented businesses attract more crime than non-sexually oriented businesses, and in fact, Plaintiffs' experts opined that the opposite is true. Plaintiff takes issue specifically with Dr. McCleary's opinion for the County and points to the twenty-five studies relied on by Dr. Danner to refute the finding that significant crime-related

adverse secondary effects are caused by and associated with the operation of sexually oriented businesses.[23]

The County contends that Dr. Danner applied the wrong standard to the ordinances, ignored the County's true rationale for the ordinances, and used faulty data to support his conclusions about the ordinances. In his expert report, Dr. Danner concluded as follows:

> [in] over twenty studies using law enforcement generated crime data and done in five states over 9 years with a variety of research designs have failed to produce any significant evidence that adult cabarets are uniquely criminogenic. The meta-analysis of all these studies combined suggests that alcohol-serving adult cabarets are probably no more likely to facilitate criminal behavior than their non-adult entertainment providing counterparts. It is most likely that alcohol is the common denominator and that whether or not a nightclub offers adult entertainment is inconsequential to the crime-related secondary effects produced by such late-night alcohol serving environments. Other business related factors not measured in these studies, such as the quality of management and the details of location, have probably influenced the variance in measurable crime causing effects that have been found among them.

See docket 42, Ex. D38a at p. 16. In his affidavit filed for purposes of this summary judgment, Dr. Danner opined that the operation of adult entertainment businesses does not disproportionately increase criminal activity over and above any normal crime to be expected in a retail business or place of public assembly. In other words, he concluded that adult entertainment businesses are not "uniquely criminogenic." He made a

---

[23]   See docket 38 Ex. D34a-34h; docket 47, Exh. A.

distinction between less frequented adult bookstores and heavily patronized "gentlemen clubs." He noted that the County's evidence was lacking for "bikini bars."

Even if this Court were to consider the information provided in the four affidavits, it would not change the outcome of this case, because the information contained in those affidavits is either already in the legislative record or insufficient to cast doubt on the County's rationale for the ordinances. Considering all of the evidence provided by Plaintiffs' four experts, Drs. Danner, Fisher, and Hanna, and Mr. Schauseil, together, the Court finds that the Board reasonably relied on or "reasonably believed to be relevant" the studies presented by the County about the problem of adverse secondary effects. See Peek-A-Boo Lounge, 337 F.3d at 1262-64. The County submitted more than the "very little evidence" that is required to support its claim that the ordinances serve to reduce adverse secondary effects and do not substantially reduce free speech. Peek-A-Boo Lounge, 337 F.3d at 1264. The County not only relied upon an expert and studies used and approved by other courts, but retained investigators who actually visited similar or the same sexually oriented businesses as the Plaintiffs in this case and found evidence to support criminal conduct, the spread of communicable diseases, and other non-crime related adverse secondary effects.

Once the County relied on evidence it reasonably believed to be relevant to the problem of adverse secondary effects, the burden then shifted to the Plaintiffs to "cast direct doubt" on the County's reasoning. This cannot be accomplished, however, by simply providing reports and testimony reaching a contrary conclusion such as those

prepared and given by Drs. Danner, Fisher, and Hanna, and Mr. Schauseil, all experts retained by the Plaintiffs.[24] <u>Daytona Grand</u> made it clear that given the existence of different conclusions based on studies, either empirical or anecdotal, the Court may not substitute its judgment for the Board.  Thus, out of an abundance of caution, this Court has considered all of the evidence, including the information in the four affidavits submitted by Plaintiffs.  This Court cannot say that the Plaintiffs have cast direct doubt on the County's rationale for the ordinances.  The process is not one in which the County must exclude all theories inconsistent with its own.  Even assuming the Plaintiff's position for its rationale is also considered to be plausible and reasonable, this Court, as noted, cannot substitute its judgment for that of the Board.  In this case, the Board considered all of the voluminous reports and the testimony at the public hearings and concluded that the County's rationale for these three ordinances was reasonably believed to be relevant to the reduction of adverse secondary effects associated with sexually oriented businesses.  This record contains no basis upon which to reverse that determination.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant's Motion for Summary Judgment (Dkt. 35) is **GRANTED**.

(2)     The Clerk is directed to enter Final Summary Judgment in favor of Defendant and against Plaintiffs.

---

[24]     <u>See</u> docket 35 at Ex. J-02, pp. 5-138.

(3)     The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on October 4, 2007.


        s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO**</u>:
Counsel of Record